UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TRACY FIDEL ALFORD,<br><br>　　　　Petitioner,<br><br>　　vs.<br><br>JEFF MACOMBER, Acting Warden,[1]<br><br>　　　　Respondent. | Case No: C 10-4414 SBA<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

　　　This matter is now before the Court for consideration of Petitioner Tracy Fidel Alford's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner seeks to challenge his 2005 robbery conviction following a jury trial in the Alameda County Superior Court.

　　　The Petition alleges four claims: (1) violation of due process based on the trial court's alleged commentary regarding the trustworthiness of a witness identification statement; (2) Griffin error (i.e., improper commentary on a defendant's failure to testify); (3) the trial court lacked jurisdiction attributable to the erroneous identification of the victim in the complaint, amended complaint, and information; and (4) ineffective assistance of counsel. For the reasons discussed below, the petition is DENIED as to all claims.

**I.　BACKGROUND**

　　**A.　PROCEDURAL HISTORY**

　　　　**1.　Trial Court Proceedings**

　　　On November 10, 2003, the Alameda County District Attorney charged Petitioner with second degree robbery, a serious felony, in which he personally used a firearm, Cal.

---

[1] Jeff Macomber, the current acting warden of the prison where Petitioner is incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Pen. Code, §§ 211, 667(c)(8), 1192.7(c)(8), 1203.06(a)(1), 12022.5(a)(1), 12022.53(c).  CT 74-75.  It was further alleged that Petitioner had been convicted of eight prior serious felonies, consisting of two second degree robberies, four residential burglaries, and two residential robberies.  CT 75-81.

On January 18, 2005, a jury convicted petitioner of second degree robbery as charged, but found that he did not use a gun.  CT 143, 145. On January 19, 2005, the jury found the prior conviction allegations true.  CT 146-47, 149-156.

On March 9, 2005, Petitioner was sentenced to prison for twenty-five years to life for robbery, plus a fifteen-year enhancement, reflecting five years for each of three of his prior convictions, resulting in a total prison term of forty years to life.  CT 206-08.

### 2. Post-Trial Proceedings

Petitioner appealed his conviction raising four issues on direct appeal, including the due process and Griffin error claims presented in this action.  On March 9, 2006, the California Court of Appeal affirmed the judgment in a partially published opinion. Answer, Ex. C6; People v. Alford, No. A109478, 137 Cal. App. 4th 612 (Cal. Ct. App. 2006).  The California Supreme Court granted review, but limited briefing to an issue that is not relevant to this proceeding.  Answer, Ex. D2, People v. Alford, No. S142508 (Cal. May 10, 2006).  On December 3, 2007, the California Supreme Court affirmed the judgment without addressing the two aforementioned claims asserted in the instant petition. Answer, Ex. D3, People v. Alford, 42 Cal. 4th 749 (2007).

Petitioner filed a petition for a writ of habeas corpus in the California Supreme Court raising the remaining two claims alleged in the instant Petition, i.e., the jurisdictional and ineffective assistance of counsel claims.  Answer, Ex. E.  On October 28, 2009, the court denied the petition without comment.  Answer, Ex. E, In re Alford, No. S173310 (Oct. 28, 2009).

Petitioner subsequently filed the instant federal habeas petition raising the four claims referenced above.  Dkt. 1.  The matter is now fully briefed and is ripe for adjudication.

**B.     STATEMENT OF FACTS**

The following facts are taken from the opinion of the California Court of Appeal:

> Aurora Pomales was working as a cashier at Albertson's market on MacArthur Boulevard in Oakland around noon on June 10, 2003, when a man she subsequently identified as defendant appeared at her check stand. Pomales described him as African-American, "six feet to about six, one," black hair "with a little gray on the sides" in a "short cut" Afro, and a goatee. She testified that defendant was wearing black jeans, a blue-and-white-checkered long-sleeved shirt with buttons, and carried a black sweater over his arm.
>
> Defendant placed three items on the check stand counter: prepackaged shrimp, lasagna, and a bag of chocolate chip morsels. Pomales scanned defendant's items, placed them in a plastic bag, and told him the total amount owed. He then said, "This is a robbery," and told her to "be very quiet." Pomales testified that she also observed defendant lift the front of his shirt to display "a little side piece" of a handgun tucked into his pants. Defendant instructed Pomales to give him $10 and $20 bills, and cautioned her, "Be very quiet. I don't want to hurt everybody in here."
>
> Pomales opened the cash drawer and extracted "the 10's and 20's" as defendant requested. When she handed the bills to defendant he said, "Put it in the plastic bag." Defendant again directed Pomales to "be very quiet," as though she "was still working and not make a big scene." Defendant then left the store and walked to the right on MacArthur Boulevard. After defendant was gone, Pomales told the "front manager" of the store, Juan Cook, that she "just got robbed."
>
> Catrina Sansoni, an "administrator-clerk" at the Albertson's market, testified that immediately after defendant walked out of the door, Pomales announced that she was "robbed." Sansoni had been checking merchandise and "ordering candy" at the front of the store "by the checkers" when she observed a "Black" man she identified as defendant proceed through cash register No. 1 with "a few items." As Pomales began to "ring up the items," Sansoni saw defendant "lift up his shirt" to reveal a "black handle" just above his pants. Pomales momentarily "froze," then reached into the register and handed defendant "some cash." Defendant walked out of the store with the bag. Sansoni pointed out to Pomales that a police vehicle was in the Albertson's parking lot. Sansoni also observed defendant "running down MacArthur Boulevard" toward High Street.
>
> Pomales ran to Sergeant Rafael Delgadillo's patrol vehicle in the parking lot. She told him that she was a cashier at Albertson's and "just got robbed." She described the suspect to Sergeant Delgadillo as African-American, about 40 years old, with gray hair "on the side," wearing black jeans "and a checkered-blue-and-white shirt, holding a black sweater and an

Albertson's bag." Pomales returned to the store as Delgadillo drove out of the parking lot onto MacArthur Boulevard.

Sergeant Delgadillo notified dispatch of the robbery, provided the description he received from Pomales, and stated that the suspect "was last seen eastbound on MacArthur toward High Street." He drove in that direction on MacArthur Boulevard. When he reached the corner at Maybelle Street he observed defendant in a blue-checkered shirt and black pants walking on the east side of the road toward Redding Street. Sergeant Delgadillo drove behind defendant, and noticed that he was also wearing black shoes and carrying a black jacket. When defendant reached the corner of Redding and Maybelle, he dropped the black jacket on the grass, then walked eastbound on Redding. Defendant was the only person Sergeant Delgadillo observed in the area that matched the description given by Pomales.

Sergeant Delgadillo stopped his patrol vehicle on Redding and approached defendant "at gunpoint." He ordered defendant to drop to the ground, face down, and "put his hands to his side." Defendant complied, and was handcuffed when backup officers arrived a few minutes later. When defendant was pat searched, a leather billfold was found in his front pants pocket that contained sixteen $10 bills and six $20 bills.

Pomales was then transported by other officers from Albertson's to the scene of defendant's detention two or three blocks away at "the end of the block" on Redding Street for a "field showup." Pomales was told that the officers would "pull somebody out of a police car" to determine if she recognized him as the robber. As soon as Pomales saw defendant she declared, "That's him." Defendant had the same "face and clothing," particularly the checkered shirt and the black jacket, as the man who robbed her. Pomales had "[n]o doubt" of her identification.

Sansoni was also taken separately to the detention scene to view someone to "see if it was the man that just robbed the store." Defendant had been taken from the car and was standing in the street. When an officer asked Sansoni, "Is that the man?" she immediately replied, "Yes, he is." She recognized the "clothes he was wearing, the structure of his body, and his face." Like Pomales, Sansoni expressed no doubt of her identification of defendant.

Sergeant Delgadillo subsequently discovered a "discarded Albertson's bag" on Maybelle Street where he had first seen defendant. When shown the contents of the bag, Pomales stated that the "food products in it" were the "same" as those brought by defendant to her check stand. No identifiable fingerprints were recovered from the bag or the items inside it. Pomales also identified the black jacket discarded by defendant as he walked eastbound on Redding as similar to the one he carried over his arm in the Albertson's store. Sergeant Delgadillo and other officers also conducted an extensive

- 4 -

> search of the area for a firearm, but "none was found." The Albertson's surveillance videotape was reviewed by Sergeant Delgadillo and Pomales, but it did not depict the face of the suspected robber.

Answer, Ex. C6 at 1-4.

## II. LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the proceeding "resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphasis added).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks omitted). Relief under the "unreasonable application" clause is appropriate "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Habeas petitioners bear the burden of showing that a state court's decision applied some Supreme Court precedent in an objectively unreasonable manner. Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

On federal habeas review, the district court reviews the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision. See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991). In the absence of a decision from the highest state court, the Court "looks through" to the "last reasoned decision" addressing the particular claim. Id.; Shackleford v. Hubbard, 234 F.3d 1072, 1079, n.2 (9th Cir. 2000). Here, the Court of Appeal's decision on direct appeal is the last reasoned decision to

address Petitioner's due process and Griffin error claims. The remaining two claims at issue were presented only to the California Supreme Court, which summarily denied relief. "Thus, when the state court does not supply reasoning for its decision, [the court is] instructed to engage in an independent review of the record and ascertain whether the state court's decision was objectively unreasonable." Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (internal quotations and citations omitted).

### III. DISCUSSION

#### A. DUE PROCESS CLAIM

##### 1. Facts

Petitioner complains that the trial court violated his right to due process in the course of ruling on an evidentiary objection. During trial, Pomales testified that immediately after the robbery, she told a police officer that Petitioner was the perpetrator. Defense counsel's hearsay objection was overruled. In ruling on the objection, the trial court briefly explained to the jury the reason why certain hearsay statements may be admissible. Petitioner alleges that the issue of his identification was a material, disputed issue, and that the judge's comments in ruling on the hearsay objection "effectively directed a verdict against [him]." Pet. at 12.

During the trial, the following exchange took place during Pomales' examination by the prosecution:

> Q: Did you see the man that came out of the police car?
>
> A: Yes.
>
> Q: Did you recognize that man?
>
> A: Yes.
>
> Q: Did you recognize that man's face?
>
> A: Yes.
>
> Q: Was that the face of the man that robbed you?
>
> A: Yes.

Q: At the time that you saw the man coming out of the police car, was the memory still fresh in your mind of the man that had robbed you?

A: Yes.

Q: When you saw the man coming out of the police car, was there any doubt in your mind whether or not that was the man that had robbed you?

A: No doubt.

Q: You said it was the same face of the man that robbed you?

A: Same face.

Q: Was it the same build?

A: Yes.

Q: Was it the same clothing?

A: Yes.

Q: Did you identify that man as the man that robbed you because of the face?  It was the same face?

A: Same face and clothing.

. . .

Q: ***What did you say, if anything, when you saw the man come out of the police car?***

Defense Atty: Objection.  Hearsay.

Prosecutor: Prior identification.

Court: The question is, "what did you say, if anything, when you saw the man come out of the police car?"

Prosecutor: Yes.

Court: Prior identification.  Objection overruled.

Ms. Pomales: "***That's him.***"

Prosecutor: Ms. Pomales . . .

Court [to jury]: Just so you understand, as you know by now, hearsay is an out-of-court statement.  So generally, you don't receive hearsay as evidence.  However, [there are] certain things called exception[s] to the hearsay rule.  [There are] certain Court-approved exceptions to the hearsay rule deemed to be trustworthy.  That's why they're exceptions.

**1**

**2**           That's one of the exceptions to the hearsay rule.  When there's an objection, "Objection, hearsay," what they may ask

**3** for goes to the state of mind to explain later action of the witness or prior identification, these are what are know[n] as

**4** exceptions to the hearsay rule that [have] been deemed trustworthy enough to be considered as evidence.

**5** 2 Reporter's Transcript ("RT") 830-832 (emphasis added).

**6**       At the end of the trial, the court instructed the jury with CALJIC No. 17.30, which

**7** states:

**8**           I have not intended by anything I have said or done, or by any questions that I may have asked, or by any ruling I may have

**9** made, to intimate or suggest what you should find to be the facts, or that I believe or disbelieve any witness. [¶] If anything

**10** I have done or said has seemed to so indicate, you will disregard it and form your own conclusion.

**11** 4 RT 1304.

**12**        **2.**       **Applicable Federal Law**

**13**       "[A] trial judge must always remain fair and impartial" and must "avoid even the

**14** appearance of advocacy or partiality." Duckett v. Godinez, 67 F.3d 734, 739 (9th Cir.

**15** 1995) (citation omitted).  At the same time, a judge is "more than an umpire." United

**16** States v. Laurins, 857 F.2d 529, 537 (9th Cir. 1988).  A trial judge may "assist the jury in

**17** arriving at a just conclusion by explaining and commenting upon the evidence, by drawing

**18** their attention to the parts of it which he thinks important, and he may express his opinion

**19** upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to

**20** their determination." Quercia v. United States, 289 U.S. 466, 469 (1933); see United States

**21** v. James, 576 F.2d 223, 228 (9th Cir. 1978) (noting that the salient question is whether the

**22** judge has made "it clear to the jury that all matters of fact are submitted to their

**23** determination").  It is perfectly appropriate for a judge to "take part where necessary to

**24** clarify testimony and assist the jury in understanding the evidence." Duckett, 67 F.3d at

**25** 739 (citations omitted)).  On federal habeas review, a court must determine only whether

**26** the state judge's behavior "rendered the trial so fundamentally unfair as to violate federal

**27** due process." Id. at 740.

**28**

### 3. Court of Appeal Opinion

On direct appeal, the Court of Appeal determined that, in light of the trial court's comments and the entire trial record, there was no reasonable likelihood that the jury misconstrued or misapplied the law. Answer, Ex. C6 at 5-6. The appellate court reasoned as follows:

> We do not interpret the trial court's remarks upon the trustworthiness of hearsay exceptions as a violation of obligation to comment fairly and impartially upon the evidence. More importantly, we do not think ***the jury*** interpreted the court's explanation, when read in its entirety, as any form of endorsement of the credibility of the identification evidence. The court was attempting to clarify for the jury an evidentiary ruling that admitted hearsay evidence of the victim's statement over objection by the defense. ***The court may have been somewhat imprudent in the explanation of its ruling -- and indeed, may have been better advised to refrain from any discussion of the rationale for exceptions to the hearsay rule -- but correctly avoided unfair comment upon the testimony***. The court did not advise the jurors that the victim's statement was worthy of belief. Rather, the court merely stated that certain categories of hearsay statements are "deemed to be trustworthy enough to be considered as evidence." Thus, the court directed the jury to consider the evidence, but properly left to the jury the task of determining its trustworthiness or credibility, and finding facts bearing upon defendant's guilt or innocence.

Id. at 6-7 (first emphasis in original, second emphasis added) (citations omitted).

### 4. Analysis

Petitioner posits that the trial court's commentary in ruling on his counsel's hearsay objection "effectively [told] the jury that the identifications were trustworthy." Pet. at 15. This contention is misplaced. The trial judge's comments did not advise or suggest to the jury that they must interpret the evidence in any particular way. Rather, the judge merely explained that some out-of-court statements are automatically excluded, while in other instances, such evidence may be considered by the jury.

In any event, to the extent that the trial judge's statement could reasonably be construed as infringing upon the province of the jury, any resulting prejudice would have been cured by CALJIC No. 17.30. That instruction clearly instructed the jurors that they should not construe anything the court may have said or done as an indication of how to

view the evidence and testimony presented. The jury is presumed to have followed that instruction, and there is no evidence to the contrary. See Tan v. Runnels, 413 F.3d 1101, 1115 (9th Cir. 2005) (noting that jurors are presumed to follow the court's instructions). Thus, the use of CALJIC No. 17.30 ensured that any errant comments by the judge did not render the trial so fundamentally unfair as to violate federal due process. See Duckett, 67 F.3d at 739.

Accordingly, the state appellate court's rejection of Petitioner's due process claim was not contrary to, or an unreasonable application of, clearly established federal law based on the case law of the United States Supreme Court. See 28 U.S.C. § 2254(d)(1). Habeas relief on this claim is DENIED.

**B.   GRIFFIN ERROR**

**1.   Facts**

Petitioner argues that the prosecutor engaged in prosecutorial misconduct in his closing arguments by alluding to the absence of defense evidence or an explanation of Petitioner's whereabouts at the time of the robbery. During his closing argument, the prosecutor stated:

> What didn't you hear? You did not hear any evidence that anyone else did the robbery. . . . There was not one shred of evidence to indicate the Defendant was anywhere else at the time of the robbery, and you can be assured of the fact [that defense counsel] would make sure, if there was any evidence of [that] nature that existed, you would have it, and you don't have it.

4 RT at 1279-80. At this point, defense counsel made an objection, which the court overruled. 4 RT at 1280. The court informed the jury, "Please keep in mind that if the defense does not -- decides not to present evidence, you're not to hold that matter against the defense or the Defendant." Id. The prosecutor continued:

> There's no evidence that the Defendant was anywhere at that time, around 12:00 noon on June 10th, 2003, except in the Albertson's committing the robbery, wearing the shirt that you've seen, taking the money that you heard about.

Id.

Citing Griffin v. California, 380 U.S. 609 (1965), Petitioner contends that the prosecutor's comments violated the prohibition against commenting on a defendant's failure to testify, as protected by the Fifth Amendment. While acknowledging that the prosecutor did not specifically comment on his failure to testify, Petitioner argues that he implicitly drew the jurors' attention to that failure because he was likely the only person who would have personal knowledge of his whereabouts at the time of the robbery.

### 2. Applicable Federal Law

In Griffin, the Supreme Court held that commenting on a defendant's failure to testify violates his or her constitutional right to remain silent. 380 U.S. at 611-15. Although a direct comment regarding the defendant's failure to testify violates Griffin, a prosecutor's indirect comment is impermissible only "if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." Hovey v. Ayers, 458 F.3d 892, 912 (9th Cir. 2006); see also United States v. Castillo, 866 F.2d 1071, 1083 (9th Cir. 1988) (prosecutor may properly comment upon defendant's failure to present witnesses so long as it is not phrased to call attention to defendant's own failure to testify). Even if a Griffin error has occurred, reversal is required only if: "(1) the commentary is extensive; (2) an inference of guilt from silence is stressed to the jury as a basis for the conviction; and (3) where there is evidence that could have supported acquittal." Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993). Stated another way, a prosecutor's improper commentary warrants reversal only if it appears that it could have affected the verdict. Beardslee v. Woodford, 358 F.3d 560, 588 (9th Cir. 2004); cf. United States v. Rodriguez-Preciado, 399 F.3d 1118, 1132 (9th Cir. 2005) ) (holding that comment on the defense's failure to explain introduced testimony or evidence does not infringe on defendant's Fifth Amendment rights), amended, 416 F.3d 939; United States v. Mende, 43 F.3d 1298, 1301 (9th Cir. 1995) (prosecutor's comments not improper where they simply reminded jury that defense had failed to present certain evidence); Guam v. Ojeda, 758 F.2d 403, 407 (9th Cir.

1985) (courts will not reverse when prosecutorial comment is single, isolated incident, does not stress inference of guilt from silence and is followed by curative instructions).

### 3. Court of Appeal Opinion

The Court of Appeal rejected Petitioner's <u>Griffin</u> error claim as follows:

> The prosecutor's argument that no evidence was presented to suggest anyone else committed the robbery, or that defendant was "anywhere else at the time of the robbery" does not fall within the Griffin proscription against comment upon the defendant's failure to testify. ***As we read the record before us, the prosecutor referred not to defendant's failure to personally contradict the evidence of his guilt with his own testimony, but instead commented fairly upon the state of the evidence, and specifically the absence of defense evidence to contradict the testimony of the prosecution's witnesses or to offer any evidence in opposition to the prosecution's case.*** . . . We find that the prosecutor's statements "would be understood by any juror as a comment on the failure by the defense to produce an alibi witness for the crucial period. This type of comment has specifically been found not to be <u>Griffin</u> error." Thus, the prosecutor did not violate <u>Griffin</u> by referring to the failure of the defense to produce evidence that defendant did not commit the crime.

Answer, Ex. C6 at 8-9 (emphasis added, citations omitted).

### 4. Analysis

Petitioner's claim of <u>Griffin</u> error is without merit. As correctly analyzed by the Court of Appeal, the record shows that the prosecutor's remarks related to the state of the evidence, and not to Petitioner's failure to testify. As such, the state appellate court, in rejecting Petitioner's claim of error, reasonably recognized that the prosecutor merely directed his comments at the lack of one or more alibi witnesses as opposed to Petitioner's failure to testify.

The above notwithstanding, even if the prosecutor's comments were impermissibly intended to call attention to Petitioner's failure to testify, they do not warrant habeas relief. See <u>Jeffries</u>, 5 F.3d at 1192. First, the comments were not extensive, as they amounted to only three sentences from a long closing argument. <u>Id.</u> Second, the comments in no way encouraged the jury to infer guilt from Petitioner's silence; rather, they focused the jury to consider whether the defense had presented any evidence to contradict the testimony of the

prosecution's witnesses. Id. Third, Petitioner has pointed to no evidence that would have supported acquittal. Id.

Accordingly, the Court of Appeal's denial of this Griffin error claim was not contrary to, or an unreasonable application of, Supreme Court authority. See 28 U.S.C. § 2254(d)(1). Therefore, habeas relief on this claim is DENIED.

### C. LACK OF JURISDICTION

#### 1. Facts

Petitioner alleges that the trial court lacked jurisdiction to try him or to enter judgment against him on the ground that the prosecution's complaint, amended complaint and information failed to state the correct victim of the June 10, 2003 robbery. In all three charging documents, the victim was mistakenly identified as store manager Catrina Sansoni ("Sansoni"), rather than the actual victim, Pomales. Pet., Exs. 1 and 2; CT 1, 5.

On June 11, 2003, the complaint with the wrong victim was issued. CT 1-4. The next day, an amended complaint was issued, still indicating the wrong victim. CT 5-8. This mistake went unnoticed until a proceeding on June 17, 2003, during which both parties were present. Pet., Ex. B3. The Clerks Docket and Minutes from that proceeding indicates the following: "Delete the name of Catrina Sansoni on the amended complaint and the correct name should be Aurora Pomales." Id. The record shows that Sansoni's name on the amended complaint was crossed out and handwritten next to it is "Aurora Pomales [undecipherable initials] - 6/17/03." CT 5.

At Petitioner's preliminary examination on October 29, 2003, Pomales testified regarding the robbery. CT 13. At the conclusion of the testimony, the prosecutor stated, "The only thing I would add or ask the Court, on the first amended complaint filed June 17th, I thought I had orally amended the complaint to have the name Aurora Pomales --." CT 71. The court responded, "It was. It was admitted on its face on June the 17th by -- it's amended on its face and it's initialed." Id.

On November 10, 2003, the prosecution filed the information, which again incorrectly identified Sansoni as the victim. CT 74. This mistake again went unnoticed

1   until a proceeding dated August 10, 2004, during which both parties were present.  CT 97.
2   The Clerks Docket and Minutes from that proceeding indicates the following: "Information
3   amended as to CT 1 to show victim's name as Aurora Pomales."  CT 97.  The record shows
4   that Sansoni's name on the information was crossed out and handwritten next to it is
5   "Aurora Pomales amended 8/10/04 [undecipherable initials]."  CT 74.

6       At the beginning of Petitioner's trial on January 3, 2005, the information was read
7   on the record and it stated that Petitioner was charged with committing second degree
8   robbery by "unlawfully, and by means of force and fear, take [sic] personal property from
9   the person, possession, and immediate presence of *Aurora Pomales*."  Pet., Ex. C at 146-47
10  (emphasis added).  Finally, Pomales testified at Petitioner's trial as the victim of the
11  robbery.  3 RT 811-926.

### 2. Analysis

13  "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of
14  the nature and cause of the accusation."  U.S. Const. amend. VI.  This right to notice of
15  what one is being charged with is among the most basic of procedural protections.  "It is as
16  much a violation of due process to send an accused to prison following conviction of a
17  charge on which he was never tried as it would be to convict him upon a charge that was
18  never made."  Cole v. Arkansas, 333 U.S. 196, 201 (1948); see Calderon v. Prunty, 59 F.3d
19  1005, 1009 (9th Cir. 1995).  This guarantee applies to the states through the Due Process
20  Clause of the Fourteenth Amendment.  Gautt v. Lewis, 489 F.3d 993, 1003 (9th Cir. 2007).

21      It is clearly established law for purposes of § 2254(d) that a criminal defendant has a
22  Sixth Amendment right to be informed of any charges against him, and that a charging
23  document, such as an information, is the means by which such notice is provided.  Gautt,
24  489 F.3d at 1004 (citing Cole, 333 U.S. at 201).  To determine whether a defendant has
25  received fair notice of the charges against him, the court looks first to the information.  See
26  James v. Borg, 24 F.3d 20, 24 (9th Cir. 1994).  An information is not constitutionally
27  defective if it states "'the elements of an offense charged with sufficient clarity to apprise a
28  defendant of what to defend against.'"  Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985)

1  (quoting Russell v. United States, 369 U.S. 749, 763-64 (1962)), amended, 768 F.2d 1090
2  (9th Cir. 1985).

3        Citing California case law, Petitioner argues that it is the "timely filing of the valid
4  information that gives the superior court jurisdiction to try an accused or enter judgment
5  against him." Pet. at 22. Petitioner also cites United States v. Prentiss, which he claims
6  held that "[b]oth defendant and victim are essential elements of [a] charge." See 256 F.3d
7  971, 981 (10th Cir. 2001) (en banc) overruled in part on other grounds by United States v.
8  Cotton, 535 U.S. 625 (2002). Petitioner asserts that reversal is required because "all three
9  accusatory pleadings name[d] someone other than the alleged victim." Pet. at 22.

10       Because Petitioner is proceeding pro se, the Court liberally construes his claim as
11 one brought under Apprendi v. New Jersey, 530 U.S. 466 (2000), which prohibits a
12 defendant's conviction of a crime with which he was never charged. Petitioner argues that
13 the information initially indicated that he was charged with the robbery of Sansoni, but he
14 was convicted of the robbery of Pomales. However, the record shows that the information
15 was amended before trial, and that the prosecution both charged and proved the robbery of
16 Pomales. Any reliance on Apprendi is misplaced because Petitioner was not convicted of
17 an uncharged crime. See People v. Whisenhunt, 44 Cal. 4th 174, 222 (2008) (finding
18 defendant's reliance on Apprendi to challenge jurisdiction was misplaced because there
19 was no conviction of uncharged offense). Therefore, the Court finds unavailing any
20 reliance on Apprendi to support Petitioner's jurisdictional claim.

21       To the extent Petitioner is claiming that he did not receive adequate notice of the
22 charge against him, the claim fares no better. Although the complaint, amended complaint
23 and information initially incorrectly listed Sansoni as the victim, Petitioner had fair notice
24 of the robbery charge against him. First, as early as June 17, 2003 -- a week after the
25 robbery -- the prosecutor alerted the court that the complaint should be amended to indicate
26 Pomales as the victim. Second, the complaint, amended complaint and, most importantly,
27 the information, were all corrected before trial to indicate that Pomales was the victim.
28 Finally, Pomales testified at Petitioner's preliminary hearing and at his trial, and the

evidence was overwhelming that she was the victim of the robbery, not Sansoni.  Thus, Petitioner had fair notice not only of the elements of the robbery charge against him, but of the name of the correct victim.  Therefore, Petitioner has not shown that his due process and Sixth Amendment rights to notice of the charges were violated.

In sum, Petitioner's jurisdictional claim has no merit.  Petitioner was not convicted of an uncharged crime, and he did not lack constitutionally required notice of the robbery charge.  Accordingly, the California Supreme Court's denial of this claim was objectively reasonable.  See Walker, 709 F.3d at 939.  Therefore, habeas relief on this claim is DENIED.

### D.     INEFFECTIVE ASSISTANCE OF COUNSEL

#### 1.     Applicable Federal Law

A claim for ineffective assistance of counsel under the Sixth Amendment is reviewed under the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  First, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." Id. at 688.[2]  Second, petitioner must establish that he was prejudiced by counsel's substandard performance.  See Gonzalez v. Knowles, 515 F.3d 1006, 1014 (9th Cir. 2008) (citing Strickland, 466 U.S. at 694).  Under Strickland, "[o]ne is prejudiced if there is a reasonable probability that but-for counsel's objectively unreasonable performance, the outcome of the proceeding would have been different." Id.  A claim for ineffective assistance of counsel fails if either one of the prongs is not satisfied.  See Strickland, 466 U.S. at 697.

#### 2.     Analysis

Petitioner first contends that the trial counsel was ineffective for failing to challenge the information on the ground that it incorrectly charged him with the robbery of Sansoni.

---

[2] Judicial scrutiny of counsel's performance is "highly deferential." Strickland, 466 U.S. at 689.  Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

Pet. at 23. As set forth above, however, the information was subject to correction by amendment. Since any challenge by counsel would have been futile, counsel's failure to object cannot constitute ineffective assistance of counsel. See, e.g., James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) (finding no prejudice in trial counsel's failure to raise futile objection to jury instruction). In addition, since Petitioner was clearly on notice that the victim was Pomales, he cannot show that he was prejudiced by counsel's conduct.

Petitioner next asserts that counsel was ineffective for failing to object at his arraignment that there was no judge present, thereby resulting in Petitioner's "not guilty" plea being taken by a court clerk. Pet. at 25. Respondent contends that Penal Code § 988 authorizes a clerk to take the plea, and as such, any objection would have been futile. Section 988 provides that an "arraignment must be made by the court, or by the clerk or prosecutor under its direction, . . ." Cal. Penal Code § 988. Here, the Clerks Docket and Minutes from the arraignment on December 3, 2003, confirm that both Alameda County Superior Court Judge Jon Rolefson and the prosecuting attorney, Deputy District Attorney Tom Barni, as well as Petitioner and his counsel, were present in court. CT 86. "In the absence of other evidence, the court records . . . must be presumed to be correct." United States v. Carroll, 932 F.2d 823, 825 (9th Cir. 1991). Petitioner's unsupported and conclusory statement that the judge was absent is insufficient to rebut the presumption of verity to which court records are entitled. See Jones v. Gomez, 66 F.3d 199, 204-205 (9th Cir. 1995) (conclusory allegations "without reference to the record or any document" are insufficient to support a claim for habeas relief) (alteration and internal quotation marks omitted)). In any event, even if the judge was not present and Petitioner's counsel was remiss in failing to object, Petitioner has failed to allege or show that he suffered any resulting prejudice. Moreover, given that Petitioner later waived arraignment on the amended information, any irregularities in the arraignment on the original information became moot.

In view of the foregoing, the Court finds that California Supreme Court's denial of Petitioner's ineffective assistance of counsel claim was objectively reasonable. See Walker, 709 F.3d at 939. Accordingly, habeas relief on this claim is DENIED.

IV. **CERTIFICATE OF APPEALABILITY**

No certificate of appealability is warranted in this case. For the reasons discussed, jurists of reason would not find the denial of Petitioner's claims either debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

V. **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. The Petition for Writ of Habeas Corpus is DENIED as to all claims, and a certificate of appealability will not issue. Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2. The Clerk of the Court shall enter judgment, terminate all pending matters and close the file.

IT IS SO ORDERED.

Dated: 3/31/14

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge